Judgment rendered November 16, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,804-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

PATRICK BUGGS                                Plaintiff-Appellee

versus

TOWN OF BERNICE AND                          Defendant-Appellant
RISK MANAGEMENT, INC.

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Claiborne, Louisiana
Trial Court No. 21-00306

Brenza Irving Jones,
Workers' Compensation Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, L.L.P.        Counsel for Appellant,
By: Brian P. Bowes                       Town of Bernice

LAW OFFICES OF STREET & STREET           Counsel for Appellee
By: C. Daniel Street

* * * * *

Before ROBINSON, HUNTER, and MARCOTTE, JJ.

MARCOTTE, J

This suspensive appeal arises from the Office of Workers' Compensation, First District East, Parish of Claiborne, Judge Brenza Irving Jones presiding. Defendant-Appellant, the Town of Bernice, appeals the trial court's ruling awarding workers' compensation benefits, payment for medical treatment, penalties, and attorney fees to plaintiff-appellee, Patrick Buggs. Appellee has filed an answer to the appeal seeking additional attorney fees. For the following reasons we affirm the trial court's ruling and award appellee additional attorney fees.

## FACTS

On January 15, 2021, plaintiff, Patrick Buggs ("Buggs"), filed a 1008 Disputed Claim for Compensation Form ("1008 Form") with the Louisiana Office of Workers' Compensation. On the 1008 Form, Buggs stated that his employer was defendant, the Town of Bernice, Louisiana, and he was employed with the town as a laborer with average weekly wages of $400 and a workers' compensation rate of $266.67. Buggs stated that the accident that was the subject of his 1008 Form occurred on March 13, 2020, in the Town of Bernice, Union Parish, Louisiana. The 1008 Form said that the accident was reported on March 13, 2020, to Winifred Owens ("Owens"), Buggs' supervisor. Buggs specified (verbatim):

> Claimant was opening the big wooden door of the equipment shed when his right shoulder popped and pain ran down his arm and fingers and fingers went numb on his right hand from injuries to neck and shoulder and parts thereof.

Buggs said that he sought medical attention with Lincoln General Hospital in Ruston, Louisiana, Dr. Brian Harris ("Dr. Harris"), and Dr.

Douglas Brown ("Dr. Brown"). Buggs claimed that no wage benefits had been paid to him and no medical treatment had been authorized, that defendant refused to pay temporary total disability payments and supplemental earnings benefits due from the date of his accident to the present and continuing, and defendant had not provided medical benefits. Buggs also sought penalties and attorney fees, along with legal interest and all costs.

Defendant filed an answer denying all claims. Defendant stated that Buggs was and is capable of regular work activity and/or light duty that disqualifies him from temporary total disability benefits, permanent partial disability benefits, supplemental earnings benefits, permanent and total disability benefits, and any other benefits under the Louisiana Workers' Compensation Act. Defendant requested that in the event Buggs is awarded workers' compensation benefits, it is entitled to offsets for any amounts earned or received by Buggs. Defendant averred that its investigation and handling of Buggs' claim was in good faith. Defendant then alleged that Buggs obtained non-emergency treatment without first seeking preauthorization and the recovery of any medical charges should be limited to $750 pursuant to La. R.S. 23:1142(B). Defendant also alleged that Buggs failed to give timely notice of the alleged accident, which prejudiced it. Defendant asked that Buggs' claims against it be dismissed with costs assessed to him.

In his pretrial statement, Buggs alleged that he suffered severe injuries due to his accident and had to seek extensive medical treatment. Buggs stated that he demanded to be treated by his choice of orthopedic surgeons, Dr. Brown, for his right shoulder and neck, which defendant denied. In

defendant's pretrial statement, it contended that Buggs did not have an accident on or about March 13, 2020, which resulted in a workplace injury. Defendant stated that Buggs was released to return to work by his physician and he was not entitled to any further workers' compensation payments. The parties stipulated in a pretrial hearing that Buggs was employed by defendant at the time of the alleged accident.

On July 14, 2021, a trial was held where the following testimony was elicited. Buggs testified that he started working for defendant at the end of May or beginning of June 2019; he was hired to work full-time as a laborer and his job entailed "trash [truck] duties and lawn mower." His hourly rate of pay was $10 an hour. Buggs stated that he injured his right shoulder while working for defendant in March 2020. Buggs affirmed that he put on his Form 1008 that he hurt his right shoulder at work on March 13, 2020, but the date of the injury was actually March 16, 2020. Concerning his accident, Buggs stated (verbatim):

> Well I went to … the building called the shack to open it up to get the mowers, and when I got ready to pull the sliding – pulling the door, something jammed the door and the door stopped and my arm kept going. I heard a pop, and numbness went down from my top part of my neck down to my fingertips, and I have to pry my fingers out from around the little latch thing, and after that it was just numb, sweaty. It got real hot.

Buggs testified that he "hollered" when he felt his arm pop. He stated that the accident occurred between 8:30 a.m. and 9:00 a.m. Buggs stated that Felix Elliott ("Elliott"), his coworker, was with him at the time of the accident and witnessed his injury. Buggs testified that the door to the shack is a "big door made out of two-by-fours and tin that slides and has concrete on the sides." He stated, "You have to lift it up and pull it out to get it

open," which is what he was doing when he heard and felt the pop in his shoulder.

Buggs stated that he had had trouble opening the shack door a couple of times prior to his injury, and because the door slides on concrete, occasionally a piece of gravel would get hung up in it. He testified that everyone had problems opening the door before the date of his accident.

Buggs testified that he had problems with that same shoulder around the end of January 2020, approximately two months before the accident that gave rise to his workers' compensation claim. He said of his January 2020 shoulder pain that he "just woke up" with his shoulder hurting; he informed Owens who told him to get it checked out. Buggs stated that he sought medical treatment for his injury and a nurse practitioner at the office of Dr. Clifton Salmon ("Dr. Salmon") told him that he had probably "overworked" his shoulder and that he should "rest it for a while." Buggs stated that he did not recall if Dr. Salmon x-rayed his right shoulder at his doctor's visit on February 5, 2020, but a radiology report for an x-ray performed on that date states that Buggs' shoulder was "normal."

Buggs testified that he was off work for about a week and a half to two weeks for the shoulder pain he had in January 2020, and then he returned to his full work duties. He stated that not long after he returned to work, defendant shortened his hours.

Buggs testified that as soon as he injured his shoulder in March 2020, he spoke with Owens, his supervisor, who told him to go speak with the mayor. While there, Buggs reported his injury to Mayor Mildred Ferguson ("Mayor Ferguson"), the mayor of Bernice, and Lana Patterson ("Patterson"), who was employed by defendant. Buggs testified that Mayor

Ferguson told him he "might need to go get it checked out." Buggs testified that he was examined by Dr. Harris at Reeves Memorial Medical Center ("Reeves Memorial") less than an hour after the injury; Dr. Harris told him that he had picked up something too heavy because of his job duties, resulting in a sprained bicep, and to rest his arm. Dr. Harris put Buggs on light duty, but did not recommend any treatment for his shoulder at that point. Buggs testified that he called Dr. Harris on April 14, 2020, and told him that he was still experiencing shoulder pain. Buggs' medical records show that he returned to see Dr. Harris on May 19, 2020. Buggs stated that Dr. Harris eventually recommended physical therapy for a sprained bicep. Buggs testified that the physical therapy made his shoulder worse.

Buggs stated that he informed Mayor Ferguson and Patterson that Dr. Harris placed him on light duty, and they informed him that defendant didn't have any light duty. Buggs continued to see Dr. Harris, and in July 2020, an occupational therapist at Dr. Harris' office referred him to Dr. Brown. On August 4, 2020, Dr. Brown examined Buggs and recommended surgery for a torn rotator cuff. Dr. Brown confirmed the diagnosis with an MRI and during surgery.

The surgery occurred in October 2020, and Buggs stated about the surgery, "[Dr. Brown] had to reconstruct my rotator cuff – shave the bone down on this side of it and shave the bone down on the other side and put little anchors in to hold it in place." Buggs stated that his rotator cuff was "completely torn up" prior to the surgery. Dr. Brown's records confirm a complete tear of Buggs' rotator cuff.

Buggs stated that he asked defendant about workers' compensation benefits, but the town denied him any benefits, so he had to use his Medicaid

benefits to get treatment.  After the surgery, Buggs suffered pain radiating from his neck and swelling.  Dr. Brown performed a second MRI on Buggs and concluded that a possible cause of his neck pain was that the vertebrae in his neck right above his shoulder were "messed up," that one of the anchors placed during surgery had shifted, and another surgery was required to fix the problem.  Buggs stated that he was unable to get that surgery, because he was denied workers' compensation benefits and Dr. Brown refused futher treatment until he received payment.  Buggs stated that he has not been released to go back to work by any physician.

Buggs testified that he had a second job as a floor tech at Bernice Nursing and Rehabilitation Center ("Bernice Rehab"), for which he was hired in January 2020, but he did not go back to work for them until February.  Buggs stated that after he injured his shoulder in March 2020, Bernice Rehab placed him on light duty, which included taking the temperature of anyone who entered the building during the COVID pandemic and doing light cleaning.  Buggs stated that he was able to do that job with only one functioning arm, but he ultimately lost the job because he could not perform his duties as a floor tech.  Buggs received his last paycheck from Bernice Rehab on July 20, 2020.  Buggs stated that he has not worked anywhere since that date.

Buggs stated that he initially put the wrong date for his injury on his 1008 Form and throughout his deposition testimony referred to his accident date as Friday, March 13, 2020.  Buggs discovered the error when going through his doctors' notes and realized that Monday, March 16, 2020, was the date of the accident.  Buggs stated that he went to the doctor the same date as the accident, and that's how he knew the date of his injury was

6

March 16, 2020. Buggs stated that his shoulder was not hurting or bothering him on the morning of March 16, 2020. He stated that prior to his injury he was able to load his work truck, "did the water," hooked up the trailer to the truck, and that he was fine until he pulled on the door to defendant's shack.

Dr. Brown's records state that Buggs' pain began in "1/2020," but Buggs explained that he had shoulder pain in January 2020, and it was the injury he received on March 16, 2020, which caused the popping sound, pain radiating down his right arm, and for his fingers to go numb.

Buggs stated about his medical bills:

> I don't know who's paying them because … Medicaid would not pay it because … they wanted to see me right now. Like, two days ago they wanted to get me back in, but it's nothing they can do. Can't treat me. [Dr. Brown] … wrote me enough muscle spasm pills to try to last me until I can get back in, but now I don't have anything.

Elliott testified that he was with Buggs when he injured his shoulder, and that "I saw [Buggs] reach and grab the door, and when he went to close it, he hollered – he screamed out like it hurt something." Elliot testified that he asked Buggs if he was alright, and Buggs replied that he hurt himself. Elliot stated, "He just said … he hurt himself and seemed like he pulled something." Elliot testified that he advised Buggs to go tell the mayor that he was injured.

Elliot stated that he and Buggs had driven to the shack in defendant's truck and were there to get some tools; he confirmed that they were working when Buggs was injured. Elliot stated that Buggs did not have any problems doing his work prior to injuring his shoulder. Elliot described the door as "It's a sliding door. It's … on wheels and … it's a tin door. And it … slides, but it was – at the time it wasn't sliding just right. It took two people

to close it sometimes." Elliot stated that he had had problems opening and closing the door to the shack prior to Buggs' accident. Elliot did not recall whether Owens was there or what day the accident occurred.

Mayor Ferguson testified that she hired Buggs as a part-time employee, and he started working for defendant on June 26, 2019. Mayor Ferguson testified that Buggs started working full-time for defendant in September 2019, as a general laborer and on trash truck duty. Mayor Ferguson stated that near the end of January 2020, Buggs approached her and said that he had a job at Bernice Rehab and wanted to return to part-time work with defendant. Mayor Ferguson stated that the next time she, Buggs, and Owens discussed the matter, they agreed that he could return to part-time status. Mayor Ferguson stated that Buggs switched to part-time work on February 3, 2020.

Mayor Ferguson stated that Buggs was supposed to return to work on February 3, 2020, but he did not show. The next day he informed her that he was at a doctor's office, because he was having problems with his shoulder. Mayor Ferguson testified that she asked Buggs if he hurt his shoulder on the job, and he said, "No. I don't know what's wrong with it." Mayor Ferguson stated that Buggs had a doctor's note stating that he could return to his full work duties on February 10, 2020, but she wasn't sure of the exact date that he came back to work, but it was after February 10, 2020. Later Mayor Ferguson stated that Buggs did return to work on February 10, 2020. The mayor stated that Buggs worked his full duties from February 10, 2020, to March 16, 2020.

Mayor Ferguson stated that the injury giving rise to Buggs' claim occurred on March 16, 2020. On that morning, Buggs and Elliott came to

8

her office saying that Buggs pulled on a door and Buggs said "a tingling went down his arm." The mayor said that Elliott stated that "I was with him, and that was all he did – pulled the door." She then told Buggs to get examined at Reeves Memorial, and she had a clerk call and let the hospital know that Buggs was coming. The next day Buggs brought an excuse from the hospital for him to be on light duty, and another excuse "from Ruston" saying he had osteoarthritis. Mayor Ferguson stated that when Buggs came to her requesting light duty work, she stated that he could pick up trash and mow, but she later acknowledged that the town doesn't have light duty work.

Mayor Ferguson stated that sometime later Buggs contacted her about filing a workers' compensation claim, and she informed him that the clerk handles those claims, and she asked the clerk to give Buggs the paperwork. Mayor Ferguson stated that she did not give Buggs a letter terminating him and he had not been terminated by the town as of the time of the trial.

Mayor Ferguson stated that she spoke with Buggs on August 25, 2020, and discussed the MRI of his shoulder and his torn rotator cuff. She affirmed that they discussed workers' compensation at that time, but that Buggs did not file for benefits, and that his next demand for workers' compensation benefits was included in a letter which came on December 4, 2020.

Mayor Ferguson stated that she had a conversation with Buggs when he started working full-time about getting a raise, and that he had to work full-time for six months to get a raise.

The mayor stated that she did not receive anything from the Office of Workers' Compensation denying Buggs' claim. Mayor Ferguson testified

9

that she was not aware that Buggs had been taken off work altogether because of his torn rotator cuff and an impingement on his spinal cord until "way after the fact." After Buggs was injured, she examined the shack door and stated, "I was able to open it. I mean, it didn't just slide open…. I had to use a little muscle, but I was able to open it." She said it didn't hurt her to open the door, and she was unaware of anyone else getting hurt opening the door.

Owens provided the following testimony. Owens stated that he worked for the town for 35 years and that he knew Buggs prior to Buggs working for the town. Owens affirmed that Buggs was employed by defendant. When asked approximately when Buggs was employed by the town, Owens stated, "Sir, I don't – I don't – I don't know because my mind – I can't – I just can't remember right off hand, now." Owens stated that Buggs' job was as a general laborer, which required him to do whatever the town required him to do.

When asked if he recalled the incident in March 2020, in which Buggs was injured, Owens stated, "Sir, I never seen – I never – I was never with Mr. Buggs when he got hurt on either case." When asked if he recalled assisting Buggs after his accident, Owens stated, "No." Owens stated that Buggs told him that he hurt his shoulder before he went to work for the town. When asked if he remembered Buggs telling him that he hurt himself in either January 2020, or March 2020, Owens stated, "I can't recall that. I – no. I – I can't remember it." Owens stated that as Buggs' supervisor he spoke with him often throughout the day.

When asked if Buggs was able to do his work before March 2020, Owens stated, "Well, he could only do so much, because when we hired

10

him, his shoulder was messed up." When asked if he remembered Buggs' last days at work, Owens stated, "No, sir, I don't, because that's been over a year ago, and I'm 71 years old. My memory ain't like it used to be." When asked how many employees he supervised, Owens gave Buggs and Elliot's names and said he thought there was one more, but could not be sure and could not provide a name for any additional employee.

Owens stated that he never told Buggs to go to the mayor about his injury. Owens stated that Buggs did not report to him that he hurt himself. Owens testified that he would tell injured employees to speak with the mayor, and that he never discussed Buggs' injury with Elliott.

Buggs offered the following exhibits that were admitted at trial:

1. A radiology report from Reeves Memorial dated May 19, 2020, and signed by Dr. Chad T. Porter ("Dr. Porter"). Dr. Porter examined two x-rays that were taken of Buggs' right shoulder on May 19, 2020; the x-rays were ordered by Dr. Harris. Dr. Porter's report recommended a follow-up MRI of Buggs' shoulder "to better evaluate for internal derangement if warranted by clinical findings."

2. A demand letter dated December 4, 2020, consisting of an executed Employee's Certificate of Compliance which was forwarded by the workers' compensation carrier. The letter stated that medical information would be forwarded soon with demand for indemnity and medical benefits.

3. A letter dated December 23, 2020, from Risk Management, Inc. ("RMI"), defendant's third-party administrator for its workers' compensation claims, demanding payment of $266.67 a week based on an average weekly wage of $400. The letter stated that Dr. Brown performed surgery on Buggs' shoulder and the medical records would be forthcoming. Records and work excuses from Dr. Harris were included showing that Buggs was placed on light duty from March 16, 2020, to May 19, 2020, when he was taken off work.

4. A letter dated December 28, 2020, directed to RMI with a copy of Dr. Brown's office notes documenting a complete tear of the rotator cuff tendons in Buggs' shoulder, which was confirmed by an MRI.

11

Dr. Brown's note from August 4, 2020, states the following (verbatim):

> Right shoulder pain, he was hurt at work pushing a heavy door.  1/2020
>
> He was seen by Dr. Mark Harris, he was x-rayed and was given ibuprofen back in May 2020.  Since then has completed physical therapy x 6 weeks with his last visit this week.  No reduction in pain, and feels like worsening [range of motion].  Ibuprofen has not helped.
> ….
>
> Visit for: Right Shoulder Pain.  Date of Injury: 1/2020.

5. The medical and billing records from Dr. Brown, which contain a letter dated February 25, 2021, from RMI which stated that it is handling Buggs' workers' compensation claim "as it relates to his accident on or about March 16, 2020," which it was denying.  The letter stated that no bills submitted to RMI would be paid.

6. A letter dated March 15, 2021, directed to RMI, with 1020 forms titled "Employee's Monthly Report of Earnings," which documented Buggs' monthly earnings during the period he was injured and could not work, from March 2020, through January 2021, documentation of his earnings from Bernice Rehab from March to July 2020; for the months after that he reported no earnings.

7. A letter dated March 31, 2021, from Buggs to RMI which stated:

> Mr. Buggs needs to get back to see his treating physician, Dr. Douglas Brown.  Dr. Brown's office will not see him until you approve the visit.  Demand is made that you approve the visit so that he can get back in to see Dr. Brown for appropriate treatment.

Buggs filed a post-trial brief in which he stated that the pre-accident x-ray of his right shoulder that was conducted at Dr. Salmon's office in January 2020, showed his right shoulder to be normal.  Buggs stated that the pain that he suffered from the March 16, 2020, accident was "totally different" from the pain he suffered in his shoulder in January 2020.  Buggs stated that Dr. Brown's records show that the "pop" that Buggs heard when

he injured his right shoulder opening the door was likely caused by a rotator cuff tear and that his spinal cord impingement in his neck was also related to the March 16, 2020, accident. Buggs stated that Dr. Brown diagnosed him with a torn rotator cuff on his first visit with the physician.

Buggs stated that his confusion over the accident date is inconsequential given that he was examined by Dr. Harris the same day as his accident. Buggs argued that the proper average weekly wage is that for a full-time employee, because defendant hired him for full-time employment and defendant's payroll records confirm that he was at full-time status. Buggs contended that Mayor Ferguson's testimony that he wanted to work reduced hours for the town does not make sense, because his pay at Bernice Rehab was $9 per hour, whereas his pay for defendant was $10 per hour. Buggs stated that he sought additional work, because defendant docked his hours. Buggs argued that Dr. Harris placed him on light duty after his injury, but the town did not offer him light duty.

Buggs stated that La. R.S. 23:1021(11) supports his position that he worked for the town as a full-time employee.[1] Buggs argues that the two requirements found in the statute are not met here, so he should be classified as a full-time employee for the town. Buggs stated that if he is considered a part-time employee, he should get workers' compensation benefits at the rate of 40 hours per week, because he also worked for Bernice Rehab, and the court was required to consider his wages from separate part-time employment to compute his average weekly wage and compensation rate.

---

[1] La. R.S. 23:1021(11) defines "part-time employee" as "an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position."

13

Buggs then argued that he should be awarded penalties and attorney fees for defendant's failure to pay for any indemnity benefits and for medical treatment. Buggs argued that despite his requests for benefits payments and documentation, he was not paid benefits. He asked for a $2,000 penalty for failure to pay indemnity benefits, a $2,000 penalty for failure to pay medical benefits, and a "substantial attorney fee."

Defendant filed a post-trial brief contesting Buggs' accident and that the accident caused his injuries. Defendant stated that there were many discrepancies between the testimony provided at trial, and that Buggs failed to prove that he had an accident on March 13, or 16, 2021. Defendant claimed that no one witnessed the accident, but that Elliott testified that he saw Buggs pulling a door and exclaiming that he injured himself, but he did not testify that he heard a "pop," or saw Buggs fall, hit the ground, or hit his shoulder.

Defendant argued that Buggs testified that Owens witnessed his accident, but Owens testified that he did not see the accident. Defendant stated that Buggs claimed that he told Owens and Mayor Ferguson that he injured himself at work in January 2020, but the two testified that Buggs told them that he did not hurt himself at work. Defendant pointed out that Owens testified that Buggs told him he had shoulder problems before defendant hired him and he complained about his shoulder while working for defendant.

Defendant argued that Buggs told Dr. Salmon that he injured his shoulder at work, when he was examined in February 2020, and that he woke up in pain and had had shoulder pain for three days. Defendant indicated that Buggs testified that he was trained for a "buffer position" with

Bernice Rehab, and he was supposed to start work there in early February, but could not due to pain in his shoulder. Buggs stated that he did not work the buffer position, because of his shoulder pain, but was instead placed on light duty. Defendant stated that Buggs did not testify that he went back to work as a buffer, and was "ultimately fired" from the nursing home because he could not do the work.

Defendant claimed that Dr. Brown's records do not show any reference to a March 13 or 16, 2020, injury while Buggs was treated there. The first mention of a March 2020 injury was in a letter dated the day before trial in which Dr. Brown confirmed statements about Buggs' injuries and whether they were related to his alleged accident. That letter provided the March 13, 2020, date, which, as Buggs testified, was inaccurate. Defendant claimed there was a discrepancy between Buggs' testimony and Dr. Brown's records. Defendant stated that the "Orthopedic History" form that Buggs filled out on August 4, 2020, at Dr. Brown's office stated that his present pain started in January 2020.

Defendant argued that Buggs gave contradicting testimony about going to part-time work for the defendant, about whether he asked the mayor to go part-time, or if Mayor Ferguson reduced his hours.

Defendant argued that Buggs was a part-time employee prior to his accident, and his workers' compensation rate is the minimum of $183. Defendant stated that Buggs is not entitled to workers' compensation benefits; Buggs worked at Bernice Rehab after his alleged injury until he was terminated in May, and there was no showing that he stopped working there due to his injury "other than his own contradictory testimony." Defendant stated that it was not arbitrary and capricious, and Buggs' claim

15

was properly contested in good faith. Defendant asked that Buggs' claim be dismissed with prejudice at his cost.

On September 21, 2021, the trial court gave an oral ruling on Buggs' workers' compensation claim. The trial court summarized the testimony given and Buggs' relevant medical history. The trial court listed the repeated visits Buggs made with medical professionals about his shoulder pain from March 16, 2020, through summer 2020, and into fall of that year. The trial court noted the correspondence from Mayor Ferguson to Reeves Memorial advising the clinic that the town would be responsible for medical services the clinic rendered on March 16, 2020. The trial court noted the physicians' work excuses Buggs received limiting his physical activity and restricting him from lifting over 10 pounds.

The trial court summarized Dr. Brown's August 4, 2020, initial diagnosis of a torn rotator cuff, which was confirmed by an MRI and surgical repair. The trial court stated that a cervical MRI was performed on Buggs in December 2020, which showed additional injury to his spine, and Dr. Brown found that the tearing of the rotator cuff in Buggs' shoulder was related to the "pop" he heard in his shoulder at the time of the accident.

The trial court found Buggs' testimony credible, but said that the "most persuasive testimony" came from Elliott, which corroborated Buggs' testimony. The trial court found the discrepancy in the date of the accident to be inconsequential, because Buggs' medical records and correspondence from Mayor Ferguson confirmed that the date of the accident was March 16, 2020.

The trial court found that Buggs began working for defendant as a part-time employee, was moved to full-time status in September 2019, and

16

he was reclassified as a part-time employee on February 2, 2020. The trial court found that Buggs was employed by two or more successive employments, the provisions of La. R.S. 23:1021(13)(a)(iv) applied, and his average weekly wage was $400 with a workers' compensation rate of $266.67.

The trial court stated that Buggs was entitled to supplemental earnings benefits for each month he was unable to earn 90 percent of his pre-accident wages. The trial court found that Buggs was also entitled to temporary total pre-accident wages and temporary total disability benefits from August 2020 and continuing in accordance with the law. The trial court found that Buggs was entitled to all medical treatment as recommended by his physicians as related to the injury sustained in the March 16, 2020, accident.

The trial court then stated:

In regard to penalties and attorney fees, the evidence is clear. Mayor Ferguson, mayor of the Town of Bernice, was aware of claimant's injury. She even forwarded correspondence to Reeves Medical Center assuring payment for the services rendered on that date. The eyewitness to the accident is in the employ of defendant. Medical evidence reveals several releases from work as a result of the accident. In spite of these and other clear indicators of liability, defendant chose to withhold indemnity benefits and medical treatment for claimant's work-related accident. Their choice in this regard can only be described as arbitrary and capricious conduct. Therefore, a penalty of $2,000 is assessed against them for their failure to pay indemnity benefits on behalf of claimant. Another $2,000 penalty is assessed against them for their failure to pay medical expenses, and attorney fees are awarded in the amount of $7,500.

On October 21, 2021, the trial court signed a judgment to that effect. Specifically, the trial court awarded Buggs $279.55 in supplemental earnings benefits for April 2020, and the additional sum of $404.05 representing supplemental earnings benefits for July 2020. The trial court awarded

17

Buggs $266.67 per week from August 1, 2020, to the present and continuing, which represented temporary total disability benefits, with legal interest. The trial court stated that defendant would provide medical benefits for Buggs' work-related injuries. The trial court reiterated the award of penalties and attorney fees stated in its oral ruling. Defendant now appeals.

## DISCUSSION

### Assignments of Error One and Two

Appellant claims that Buggs' injury was a pre-existing medical condition and that he was not really hurt at work on March 16, 2021. Appellant states that there was no witness to the accident and Buggs' testimony was unreliable and not credible. Appellant also argues that the only information given to Dr. Brown regarding a March 13, or 16, 2021, injury was the letter provided to Dr. Brown the day before trial and that Dr. Brown's records state that Buggs was injured in January 2020. Appellant asks that Buggs' claims be dismissed with prejudice at his cost.

Appellee argues that the town misstates the facts and that his accident was witnessed by Elliott and was reported immediately to Mayor Ferguson. Appellee argues that there is no evidence that he had a disability prior to his March 16, 2020, accident in which he heard a "pop" and was then unable to use his arm. Appellee also contends that Dr. Brown found the description of his accident consistent with his injuries.

A claimant in a compensation action must establish personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A); *Marange v. Custom Metal Fabricators, Inc.*, 11-2678 (La. 7/2/12), 93 So. 3d 1253; *Stringer v. Hand Constr., L.L.C.*, 52,380 (La. App. 2 Cir. 11/14/18), 261 So. 3d 139. "Accident" means an unexpected or

18

unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).

Factual findings in workers' compensation cases are subject to the manifest error standard of review. *Lafayette Bone & Joint Clinic v. La. United Business SIF*, 15-2137 (La. 6/29/16), 194 So. 3d 1112; *Stringer v. Hand Constr., L.L.C.*, *supra*; *Johnson v. Nw. La. War Veterans Home*, 51,875 (La. App. 2 Cir. 2/28/18), 246 So. 3d 681. Under this standard, the reviewing court does not decide whether the workers' compensation judge ("WCJ") was right or wrong, but only whether the judge's findings are reasonable. *Buxton v. Iowa Police Dept.*, 09-0520 (La. 10/20/09), 23 So. 3d 275; *Stringer v. Hand Constr., L.L.C., supra*; *Johnson v. Nw. La. War Veterans Home, supra*. The reviewing court is not permitted to reweigh the evidence or reach its own factual conclusions from the record. *Marange v. Custom Metal Fabricators, Inc., supra*; *Stringer v. Hand Constr., L.L.C., supra*.

In *Arceneaux v. Domingue,* 365 So. 2d 1330 (La. 1979), the Louisiana Supreme Court set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is not clearly wrong or manifestly erroneous. See also *Ardoin v. Firestone Polymers, L.L.C.*, 10-0245 (La. 1/19/11), 56 So. 3d 215.

Despite appellant's claims to the contrary, Buggs' accident was witnessed by Elliott, who was standing near Buggs at the time of his

accident and saw it happen. Elliott stated that he and Buggs had completed some work on the morning of March 16, 2020, prior to the accident, and according to Mayor Ferguson, Buggs and Elliot reported Buggs' accident to her immediately after it happened. Buggs then directly sought medical care, which is corroborated by his medical records. Mayor Ferguson also testified that she had to "use a little muscle" to open the door that caused Buggs' injury, which shows that the door was not easy to open as Buggs and Elliott testified.

Appellant also argues that Owen's testimony reveals that Buggs had shoulder pain prior to working for the town and that Owens stated that he was unable to recall Buggs telling him he got hurt while working. However, Owens said several times throughout his testimony that he has memory problems and struggles with remembering things.

Buggs was treated for shoulder pain in January 2020, and once that treatment concluded, he was able to perform his full work duties for appellant for several weeks prior to his accident on March 16, 2020. It is clear from the record that his January 2020 shoulder pain and the work-related injury he sustained on March 16, 2020, are unrelated. Buggs testified that his January shoulder pain was not connected to any specific injury, but was probably from overuse, and that he just woke up one morning with his shoulder hurting. Furthermore, the x-ray performed of Buggs' shoulder in January 2020 showed that his shoulder was normal.

Appellant makes much of the discrepancies regarding the date of Buggs' injury found in his 1008 Form and deposition testimony and in Dr. Brown's note in his medical records. However, Buggs acknowledged that he was initially mistaken about the date of his injury, and that his 1008 Form

20

was prepared and his deposition testimony was given several months after his accident occurred. Buggs testified that he went to the hospital immediately after his accident, and those records corroborate his testimony that the accident happened on March 16, 2020. Mayor Ferguson also confirmed that March 16, 2020, was the date of Buggs' accident.

Buggs' medical records provided by Dr. Brown state that Buggs informed him that he was injured at work while opening a door and that the injury occurred in "1/2020." That those medical records include the incorrect date for Buggs' injury is inconsequential when examined with the other evidence admitted which corroborates the fact that Buggs' injury was sustained on March 16, 2020.

As to appellant's argument that the only information Dr. Brown provided that stated that Buggs' injury occurred in March 2020 was signed and provided to appellant the day before the trial, making it suspicious is not supported by the record. Counsel for appellant stated on the record that he had an agreement with Buggs' counsel not to object to Dr. Brown's letter in return for agreeing to the admission of Buggs' records from Dr. Salmon. Nowhere in the record does it show that Dr. Brown was provided inaccurate or misleading information regarding Buggs' injury. Dr. Brown's note in Buggs' medical records states that he told his doctor that he injured his shoulder while opening a door at work.

Buggs' accident was work-related as he testified. We find that there is a reasonable factual basis for the trial court's ruling and the record establishes that its findings are not clearly wrong or manifestly erroneous.

Assignment of Error Three

21

Appellant asserts that Buggs' workers' compensation rate should be calculated at $183.00, because he worked as a part-time employee for appellant.

Appellee states that he is entitled to indemnity benefits based on 40 hours, because he was a full-time employee for appellant, or because he had lost income from the job he had in addition to the one he worked for appellant.

La. R.S. 23:1021(13)(iv)(bb) provides:

A part-time employee, as defined in R.S. 23:1021(9) and who is employed by two or more different employers in two or more successive employments, shall be entitled to receive benefits as follows:

> (aa) If an employee is employed by two or more different employers in two or more successive employments and the employee incurs a compensable injury under the provisions of this Chapter in one of the employments, the employer in whose service the employee was injured shall pay the benefits due the employee as provided in this Chapter.

> (bb) If the employee is a part-time employee in one of the successive employments, is injured in that employment, but as a result of the injury also incurs loss of income from other successive employments, that employee shall be entitled to benefits computed by determining wages under the provisions of this Subsection using his hourly rate in employment at the time of injury and using the total hours worked for all employers of the part-time employee, but not to exceed his average, actual weekly hours worked or forty hours weekly, whichever is less.

Appellant argues that the WCJ incorrectly classified Buggs as a full-time employee when he worked for appellant part-time prior to his accident. Appellant's argument does not address the fact that the WCJ found that Buggs worked part-time for the town prior to his accident, but he was entitled to benefits under La. R.S. 23:1021(13)(iv)(bb), because he also incurred loss of income from being unable to work for his second employer,

22

Bernice Rehab, due to his torn rotator cuff. Buggs provided the trial court with documentation of his earnings, and he sufficiently proved that he was entitled to workers' compensation benefits for his lost income from both appellant and Bernice Rehab.

Assignment of Error Four

In contesting the award of attorney fees, appellant argues it was not arbitrary, capricious, or unreasonable in denying Buggs' workers' compensation claim given the "discrepancies" in Buggs' claims, stating, "A Monday morning injury is already suspicious."

Appellee states that penalties and attorney fees are warranted, because "appellant's entire defense consists of a misrepresentation of the facts and an unwarranted attack on his credibility."

The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid. La. R.S. 23:1201(B). Medical benefits shall be paid within sixty days after the employer or insurer receives written notice thereof. La. R.S. 23:1201(E)(1).

La. R.S. 23:1201(F) governs the assessment of penalties and award of attorney fees for an employer's failure to pay benefits or authorize medical treatment. La. R.S. 23:1201(F)(2) provides that Subsection (F) is inapplicable if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer had no control. *Johnson v. Nw. La. War Veterans Home*, *supra*; *Smith v. Graphic Packaging, Inc.*, 51,590 (La. App. 2 Cir. 9/27/17), 244 So. 3d 755, *writ denied*, 17-1806 (La. 12/15/17), 231 So. 3d 640.

In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base the denial of benefits. *Johnson v. Nw. La. War Veterans Home, supra*; *Davenport v. Foster Farms, L.L.C.*, 46,430 (La. App. 2 Cir. 7/13/11), 69 So. 3d 1263, *writ denied*, 11-1781 (La. 10/14/11), 74 So. 3d 213. Reasonably controverting a claim means that the employer has sufficient factual and medical information to reasonably counter that provided by the claimant. *Johnson v. Nw. La. War Veterans Home, supra*; *Smith v. Graphic Packaging, Inc., supra*. The crucial inquiry in determining whether to impose penalties and attorney fees is whether the payor had an articulable and objective reason to deny payment at the time it took action. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So. 2d 1181; *Johnson v. Nw. La. War Veterans Home, supra*; *Smith v. Graphic Packaging, Inc., supra*; *Henderson v. Graphic Packaging Int'l, Inc.*, 48,491 (La. App. 2 Cir. 11/20/13), 128 So. 3d 599.

Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature and are intended to deter indifference and undesirable conduct by employers and insurers toward injured employees. *Iberia Med. Ctr. v. Ward*, 09-2705 (La. 11/30/10), 53 So. 3d 421; *Smith v. Graphic Packaging, Inc., supra*. The WCJ's grant or denial of penalties and attorney fees in a workers' compensation case is subject to manifest error review. *Thomas v. Browning-Ferris Inc.*, 04-1584 (La. 2/25/05), 894 So. 2d 1091; *Tingle v. Page Boiler, Inc.*, 50,373 (La. App. 2 Cir. 1/13/16), 186 So. 3d 220.

The WCJ's award of penalties and attorney fees based upon defendant's failure to controvert Buggs' claim was correct here. As the WCJ noted: (1) Mayor Ferguson was aware of Buggs' injury shortly after it

24

occurred; (2) the mayor forwarded a letter to Reeves Memorial stating that the town would pay for the services rendered to Buggs on the date of his accident; (3) Buggs' accident was witnessed by Elliott, who worked for defendant and went with Buggs to report his injury to the mayor; and (4) Buggs gave to defendant several medical work releases as a result of the accident to defendant. Defendant had ample notice of Buggs' injury, but still chose not to pay him workers' compensation benefits, including benefits for additional surgery that Buggs needs.

Claimant filed an answer to the appeal requesting an award of additional attorney fees for work required on this appeal. A workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal. *Frith v. Riverwood, Inc.*, 04-1086 (La. 1/19/05), 892 So. 2d 7; *Marshall v. Town of Winnsboro*, 52,733 (La. App. 2 Cir. 7/10/19), 277 So. 3d 907.

Based on our decision to affirm, we grant Buggs' request for additional attorney fees and amend the judgment to award an additional $1,000 to reflect work performed on this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. An additional $1,000 in attorney fees is awarded to claimant, Patrick Buggs. Costs of this appeal in the amount of $1,037.32 are assessed to the appellant, Town of Bernice, in accordance with La. R.S. 13:5112(A).

**AFFIRMED.**

25